{¶ 28} I concur fully in the judgment and analysis of the majority. The sentences imposed fall within the range of sentences for felony offenses of the first degree, and the record demonstrates that the trial court considered the statutory purpose in fashioning the sentences; therefore, they do not constitute a manifest injustice warranting reversal.
 {¶ 29} I write separately because the unique facts in this case provide the opportunity to reflect on Ohio's current sentencing format in light of the release of both State v. Foster, supra, and State v.Mathis, supra, and the demise of much of Senate Bill 2.
 {¶ 30} Like this case, most current challenges to sentences within a statutory range raise claims involving proportionality and consistency under R.C. 2929.11(B):
 "§ 2929.11. Purposes of felony sentencing; discrimination prohibited
 * * *
 "(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate *Page 10 with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."
 {¶ 31} Rather than promoting cosistency, Ohio's current scheme invites the perception of inconsistency. In this instance, Moore was sentenced on two counts of aggravated vehicular homicide, both felony offenses of the first degree. The range of sentence on each count was three to ten years. Pursuant to Foster, trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences. State v. Vance, Franklin App. No. 06AP-1016, 2007-Ohio-4407. Thus, the potential penalty Moore faced was anywhere from three years (minimum concurrent) to twenty years (maximum consecutive) under Ohio's sentencing scheme. In my view, the range for offenses like aggravated vehicular homicide is too broad and needs to be addressed by the legislature.
 {¶ 32} Griffin and Katz originally asserted that Ohio's plan under S.B. 2 would balance judicial discretion and individuality in sentencing.
 {¶ 33} "The Ohio plan attempts to assure proportionality in felony sentencing through consistency. R.C. 2929.11(B). Consistency, however, does not necessarily mean uniformity. Instead, consistency aims at similar sentences. Accordingly, consistency accepts divergence within a range of sentences and takes into *Page 11 
consideration the trial court's discretion to weigh relevant statutory factors." Griffin and Katz, Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan (2002), 53 Case W.Res.L.Rev. 1, 12.
 {¶ 34} Unfortunately, in the real world, this effort has been an abject failure. As the prosecutor notes in her brief, "sentences for Aggravated Vehicular Homicide are all over the board." Judges inherently view facts and circumstances differently. What one judge finds significant, another judge considers marginal. The variations in viewpoints, whether focused on the individual background of the offender or the particular facts of a case, contribute to perceived inconsistencies. It's not difficult for a judge to rationally point to some circumstances in the record that support that judge's view on imposing either a "high" or a "low" sentence within the available range.
 {¶ 35} In essence, you can have either proportionality and consistency or wide-ranging judicial discretion, but you cannot have both.
 {¶ 36} Much has been made of the hope that a compilation of a database of sentences statewide will solve all these problems. The mythical belief that compiling sentences of offenders from across the state in a database will resolve perceived disparities is just that, a myth. Judges will continue to review facts and circumstances, both involving the crime and the individual, differently. At times, this *Page 12 
will result in a greater or lesser penalty than the apparent norm identified in the database.
 {¶ 37} While most scowl at the mere mention of the now discredited federal "grid format" for sentencing, that method certainly ensured similarly situated offenders received similar sentences. A workable substitute for the present system, short of a "grid approach," may be as simple as narrowing the range of sentences for similar offenses and statutorily mandating or exempting those subject to consecutive terms. This would preserve some judicial discretion, but afford some structural consistency. Any such approach, however, is the province of the legislature and not the judiciary. *Page 1